Filed 6/27/13  P. v. Henley CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B239873 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA364709) |
| v. | |
| DARRELL KESSLER HENLEY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Craig E. Veals, Judge.  Affirmed.

Charles R. Khoury, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Blythe Leszkay and Toni R. Johns Estaville, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Darrell Henley appeals from a judgment entered after a jury found him guilty of assault with a deadly weapon. After finding prior conviction allegations to be true, the trial court sentenced him to 35 years to life.

Henley contends the trial court denied him due process by allowing him to represent himself at a portion of the court trial on the priors and at the sentencing hearing. He also contends insufficient evidence supports the trial court's true findings on the prior conviction allegations. He argues the court should have excluded on hearsay grounds the evidence the prosecution introduced to prove the prior conviction allegations (Penal Code[1] section 969b packet, rap sheet and appellate court decision). He seeks reversal of the true findings on the prior conviction allegations and remand for resentencing. We affirm.

## BACKGROUND

**Charges and Pretrial Proceedings**

An amended information, dated January 22, 2010, charged Henley with one count of assault with a deadly weapon (§ 245, subd. (a)(1)). The amended information also alleged Henley had sustained three prior robbery convictions which qualified as serious or violent felonies within the meaning of the prior serious felony enhancement and the "Three Strikes" law. (§§ 667, subds. (a)(1), (b)-(i) & 1170.12, subds. (a)-(d).)

The same day the amended information was filed, January 22, 2010, Henley requested permission to represent himself during a pretrial conference.[2] The trial court (Judge John S. Fisher) stated it would have Henley fill out the required forms for self-representation and then resume the hearing on the matter. Before breaking for Henley to complete the paperwork, the court asked defense counsel why Henley was wearing "a yellow outfit." Counsel stated his belief Henley had "once been sent to Patton [mental

---

[1] Further statutory references are to the Penal Code.

[2] This is not the request for self-representation which is at issue on appeal. Shortly before oral argument in this matter, Henley requested permission to augment the record to include the minute order and reporter's transcript from this January 22, 2010 hearing. We granted the motion to augment and have considered this information in deciding this appeal.

hospital].” The trial court stated it would appoint an expert to determine whether Henley had “the capacity to waive [his] right to a lawyer.”

The trial court asked Henley to waive time on his case because it would take about 30 days for the court to receive the expert's determination. Henley refused to waive time. The court denied Henley's motion to represent himself. The court explained it had “good cause” to order the expert evaluation “in light of the representation that he's been to Patton” and the court's “concern[] about his mental status based on what [the court had] seen and heard.” After a pause in the proceedings, defense counsel informed the court that counsel believed Henley wanted to waive time. As the court began to respond, Henley stated: “I waive it on the *Pitchess* motion.” The court stated: “Plus he interrupts. That's another reason why he's not going to be a pro per.” The court declined to appoint the expert and denied the motion. Henley responded to the court's ruling with profanity.

The matter went to trial before Judge Fisher. On April 8, 2010, the trial court found the jury was hopelessly deadlocked and declared a mistrial.

On July 7, 2010, at a pretrial conference before retrial of the matter, Henley requested permission to represent himself.[3] He filled out and submitted an “Advisement and Waiver of Right to Counsel (*Faretta* Waiver)” form. After holding a hearing on Henley's request, the trial court (Judge John S. Fisher) issued a minute order stating, the “Court finds that the Defendant voluntarily and intelligently chooses self-representation, and that he knowingly, intelligently, understandingly, and explicitly waives his right to counsel, and determines that Defendant is competent to represent himself.” The court tentatively granted Henley's request to represent himself, pending evaluation by a court-appointed psychiatrist regarding Henley's mental competence to represent himself.

---

[3] This is not the request for self-representation which is at issue on appeal. As set forth below, Henley was represented by counsel at the retrial of this matter when he was convicted of assault with a deadly weapon. During the court trial on the prior conviction allegations, Henley again requested permission to represent himself and the trial court granted his request. Henley challenges the court's decision to allow him to represent himself during the court trial on the priors and at the subsequent sentencing hearing. We discuss this first request for self-representation because it is relevant background information.

3

On July 8, 2010, Jack Rothberg, M.D., Ph.D. examined Henley at the county jail "to assess his ability to represent himself in Pro Per." Dr. Rothberg concluded Henley was "competent for the purpose of representing himself." Dr. Rothberg's Psychiatric Report notes Henley "was fully aware of every nuance and detail that was in the arrest report" and "was able to discuss ways that he might impeach the police testimony." Henley was aware he was facing 25 years in prison if convicted because of the sentence enhancement allegations. He understood "the nature and the purpose of the proceedings and the roles of the participants."

According to the report, Henley informed Dr. Rothberg "that while the jury was deliberating and when it became evident that a hung jury was a possibility an offer was made for two years in state prison with one year credit, so that he would have been done [in] another year. He apparently refused that." Dr. Rothberg noted: "I did discuss with him various nuances of his current circumstances and the risk involved in going to trial with the possibility of doing many, many years in custody versus one year after a plea. He indicated that he should not have any strikes so those should be stricken. He claims he could not get his attorney to prepare a writ of habeas corpus. When I tried to explore why his attorney refused to do that, he said his attorney told him that these were not viable options. He seemed to suggest that he knew more about what would be a strike because he believes there are errors in his rap sheet. Nonetheless, when exploring why he thought he would have a better idea what would be admitted as evidence as compared to his attorney, he just insisted that he would prevail. In discussing the fact that he has already had one trial and more jurors than not felt he was guilty, that there was no reason to think that he would necessarily do better the next time around, particularly if he is representing himself. There was very little reasoning with him on that matter."

Dr. Rothberg set forth Henley's "long history of psychiatric difficulties." Henley, who was 51 years old at the time of the examination, stated he had experienced "auditory hallucinations in his 20's." He also had experienced suicidal ideation in the past. Henley "made a couple of suicide attempts, both in the 1980's by cutting his wrists." He had been hospitalized four times for mental health issues. Henley reported he had "had

4

periods of mania when he has been up for days at a time without needing to sleep, and other occasions when he has been in bed for a few days at a time." He had taken Seroquel in the past. While in custody at the county jail, Henley was not receiving treatment for mental health issues. He made a request for Seroquel which was denied. He was offered Depakote and Cogention but refused these medications. Henley told Dr. Rothberg he currently was not experiencing auditory hallucinations or paranoid delusions and was not suicidal.

In his report, Dr. Rothberg described Henley as pleasant, cooperative, alert, well-oriented and mildly anxious, with "somewhat pressured" speech. According to Dr. Rothberg, Henley's "associations are not entirely logical with some evidence for a thought disorder. . . . His fund of knowledge, ability to abstract and general intellectual functioning are in the below average range. He demonstrates very little capacity for insight."

Dr. Rothberg's report concludes: "There is certainly little doubt that [Henley] is not very capable of representing himself given his educational background and his reasoning process. The question is whether this decision-making is colored by psychotic distortion. I did not see strong evidence for that. It is consequently my opinion that he is competent for the purpose of representing himself."

The trial court allowed Henley to represent himself in pretrial proceedings. During a hearing on November 18, 2010, however, Henley gave up his pro per status and requested appointment of counsel to represent him. The court granted his request and appointed defense counsel.

In February 2011, the matter was retried before a different judge (Judge Craig E. Veals) than the one who had conducted the first trial and appointed a psychiatrist to evaluate Henley's mental competence to represent himself. Henley was represented by counsel at trial.

**Evidence Presented at Trial**

On November 13, 2009, Nemiah Butler asked Henley to help him run some errands. Butler had suffered a stroke which limited his mobility. Butler's regular

5

caretaker had recently passed away, so he called on family and friends for assistance. Butler and Henley had been friends for about 30 years. On November 13, Henley took Butler to the bank and the grocery store and then back to Butler's apartment. Butler paid Henley $25 for coming to his aid.

Henley said he was going out to the store across the street. Butler asked Henley to bring him some wine. According to Butler's trial testimony, when Henley returned from the store he was acting different. "He was aggressive, acting like he was angry or something." Butler and Henley shared the bottle of wine Henley brought back from the store. Butler recalled he drank "[a]bout three capfuls" of the wine and Henley drank the rest of the bottle.

After Henley finished the wine, he got up, put a knife to Butler's neck and said, "'You're going to catch up with your friend.'" Butler recognized the knife as one his son had given him. Butler kept the knife in a cabinet drawer in the kitchen. Butler did not know how Henley came to be holding that knife. Henley stuck Butler with the knife and Butler's neck bled a little bit. Butler believed Henley dropped the knife.

Butler picked up the phone and dialed 911. Henley started punching Butler's face. Henley hit Butler's eye about five times. Henley kept repeating that he was going to make Butler catch up with his friend. Butler believed Henley was referring to Butler's deceased former caretaker. Henley indicated he wanted Butler to give him more money.

Police officers responded to Butler's apartment. From outside the door, one of the officers heard someone inside the apartment say something like, "'Come on, man. Aren't you going to fucking give me some money,'" in a loud, aggressive tone. The officers knocked and then entered the apartment through the unlocked front door. Henley was sitting on a bed holding an object in front of Butler. Henley turned to look at the officers and then placed the object underneath him. After the officers detained Henley, they recovered a knife from the bed where Henley was sitting. According to Officer Carlos Escobar's trial testimony, Butler appeared scared. He had a contusion on his face around his eye and a cut around the left side of his neck.

6

The prosecution presented evidence of a prior uncharged incident between Henley and Butler which occurred on April 25, 2009. Butler, the maintenance man from his residence, and a police officer testified about this incident. Henley demanded money from Butler, threatened Butler and destroyed items in Butler's apartment. The maintenance man called the police after he saw Henley trying to gain access to the laundry room and pounding on the door to Butler's apartment. According to Butler, Henley hit him with a hammer during this prior incident.

Henley testified at trial. He denied holding a knife to Butler's neck and denied punching Butler on November 13, 2009.

On February 10, 2011, the jury found Henley guilty of assault with a deadly weapon.

**Trial on Priors and Request for Self-Representation**

On February 14, 2011, the trial on the prior conviction allegations began as a jury trial. Henley was still represented by counsel at this point. As discussed below, the trial on the priors concluded as a court trial (before Judge Veals) with Henley representing himself.

The prosecution called a paralegal from the Los Angeles County District Attorney's Office to testify before the jury. The paralegal testified about People's Exhibit No. 14, a section 969b packet,[4] an 11-page document certified by the Department of Corrections regarding Henley's July 25, 1986 and February 26, 1990 convictions for

---

[4] Section 969b provides: "For the purpose of establishing prima facie evidence of the fact that a person being tried for a crime or public offense under the laws of this State has been convicted of an act punishable by imprisonment in a state prison, county jail or city jail of this State, and has served a term therefor in any penal institution, or has been convicted of an act in any other state, which would be punishable as a crime in this State, and has served a term therefor in any state penitentiary, reformatory, county jail or city jail, or has been convicted of an act declared to be a crime by any act or law of the United States, and has served a term therefor in any penal institution, the records or copies of records of any state penitentiary, reformatory, county jail, city jail, or federal penitentiary in which such person has been imprisoned, when such records or copies thereof have been certified by the official custodian of such records, may be introduced as such evidence."

7

robbery.  The paralegal also testified about People's Exhibit No. 15, Henley's rap sheet, which includes an August 18, 1977 juvenile adjudication for robbery.  The paralegal further testified about People's Exhibit No. 16, a collection of documents certified by the Los Angeles County Superior Court and the California Court of Appeal, Second Appellate District, regarding Henley's August 18, 1977 juvenile adjudication for robbery.

Outside the presence of the jury, Henley, who was still represented by counsel, waived jury trial on the priors and requested the matter be concluded as a court trial.  The trial court excused the jurors.

Henley's counsel objected to People's Exhibit Nos. 14-16.  Counsel argued, "some of the contents are not typical records that you would find in a priors trial, particularly for the oldest conviction.  There is no photo . . . ."  Counsel also argued:  "I've had this issue before where the paralegal comes in and testifies to the records; basically just reads off whatever has been stamped.  I think some of the documents go outside of his scope of employment.  And I think there's insufficient foundation for him to read into the record off the paper."  Noting the documents were certified, the trial court received the exhibits in evidence over defense counsel's objection.  The court continued the trial on the priors and indicated it would make findings on the prior conviction allegations on the next court date.

On June 3, 2011, at the continued trial on the priors, Henley's counsel made a further objection to the documents the prosecution introduced in support of the 1977 juvenile adjudication for robbery, specifically the appellate decision affirming the judgment.  Counsel argued "if you have a court of appeal decision that's based on something that is done far after a conviction and any statement of the facts or procedural process in that document is based on some other document, it's not the same level of reliability as if it was a docket or a minute order or a prison record from when he was committed to prison."[5]

---

[5] As part of People's Exhibit No. 16, the prosecution also introduced Los Angeles County Superior Court orders regarding the 1977 juvenile adjudication for robbery and Henley's commitment to the California Youth Authority.

Defense counsel indicated Henley wanted to address the court and request permission to represent himself. When the trial court allowed Henley to speak, he argued he had a "conflict of interest" with defense counsel regarding witnesses Henley wanted to call, but who were not called, at retrial on the assault with a deadly weapon charge. He also listed reasons he believed he should not have been convicted and was entitled to a new trial (e.g., the prosecution witnesses were lying).

After hearing Henley's arguments about why he did not receive a fair trial on the charged offense, the trial court responded: "I know what you're going to say and I'm trying to really kind of play it both ways in the sense that I don't think he's qualified to represent himself based upon what I have heard. His understanding, his grasp of things, as well as some other -- do you have a speech impediment? What is that? Quite frankly, you stutter quite a bit. It's difficult to understand you. . . ." The court stated Henley had "qualified counsel" to represent him. Henley disagreed that his counsel was "qualified." The court asked Henley if he believed he would "do a better job" than counsel and Henley responded affirmatively. The court told Henley, "your arguments just don't make any sense." The court reviewed with Henley evidence supporting the conviction. Henley maintained he did not receive a fair trial because the prosecution witnesses lied and Henley's witnesses were not called.

The trial court denied Henley's request for permission to represent himself, but noted the court "afforded you every opportunity to argue this matter so, in effect, you have represented yourself, although you are represented technically by counsel."

At the outset of the next hearing on June 20, 2011, the trial court stated: "[T]here was some issue as far as whether Mr. Henley would proceed in pro per when we were last together. [¶] And as I recall, effectively, Mr. Henley has been acting in pro per. He's been arguing on his behalf and so forth. And this, of course, has been supplemented by argument on his behalf by his counsel." The court indicated it was granting Henley pro per status and asked him if he was ready to proceed with sentencing. Henley requested additional time to prepare, and the court continued the matter. Defense counsel asked the court about resolution of the prior convictions issue. The court responded: "There were

9

three priors. And, consistent with the brief discussion that we had off the record, two of them seem to be valid prior strikes." The court indicated it was referring to the 1986 and 1990 robbery convictions. During this hearing, Henley filed two handwritten motions for new trial.

On July 20, 2011, the trial court concluded the court trial on the priors. Before proceeding, the court urged Henley to reconsider his decision to represent himself. Henley confirmed he wanted to represent himself. For the second time, he filled out and submitted an "Advisement and Waiver of Right to Counsel (*Faretta* Waiver)" form.

Initially, Henley stated he was contesting the priors. He argued about the circumstances of the crimes and why he should not have been convicted of robbery in any of the three cases. The trial court explained the only issue at that point in the proceedings was whether Henley had prior convictions for robbery. The underlying circumstances of the crimes were not relevant. Henley conceded, "Those are my cases," and informed the court he wanted to submit on the issue.

Before concluding the trial on the priors, the court stated: "And one other thing I do want to say to you is that it seems to me that there's some issue as far as your understanding this process which is understandable, you're not at attorney. But the whole point is you're an intelligent man. The question is do you wish to be represented by counsel? The court recommended to Henley that he be represented by counsel. Henley declined, stating he believed he was qualified to represent himself.

The trial court found the prior strike allegations to be true. The court continued the matter for sentencing.

**Sentencing**

At the outset of the sentencing hearing on July 29, 2011, the trial court asked Henley if he wanted to be represented by counsel and Henley declined. The court commented it did not believe the outcome would be different whether or not Henley was represented by counsel.

With regard to the three prior robbery convictions, Henley reiterated he was conceding, "They are mine," but asked the court to dismiss them pursuant to *People v.*

10

*Superior Court* (*Romero*) (1996) 13 Cal.4th 497. Henley agreed he had already admitted the three prior robbery convictions were strikes. After reviewing Henley's "pretty extensive criminal history beginning in January of '77," and allowing Henley to argue the matter further, the trial court denied Henley's *Romero* motion.[6] The court noted Henley had three prior strikes and "only two are necessary" to sentence him as a third strike offender.

Henley also presented lengthy argument on his motion for new trial. During the argument, the trial court commented: "The problem that's presented here is that you're really not arguing this well from your standpoint, but you insist that you and no one else argue this, so it kind of puts the whole situation -- [¶] . . . You don't want your attorney. You want to argue this yourself, but you're not really doing that good a job." The court also commented, "I don't see any reason why you can't" represent yourself. The court denied Henley's motion for new trial.

The trial court sentenced Henley to 25 years to life on the offense under the Three Strikes law, plus a consecutive term of 10 years for two prior robbery convictions under section 667, subdivision (a)(1).[7]

## DISCUSSION

### Self-Representation

Henley contends the trial court denied him due process in allowing him to represent himself at a portion of the court trial on the priors and at sentencing. He asserts the true findings on the prior conviction allegations must be reversed and the matter remanded for resentencing.

A criminal defendant generally "has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so." (*Faretta v. California*

---

[6] Henley filed a handwritten *Romero* motion which he read into the record in arguing his motion.

[7] The 1977 juvenile adjudication for robbery does not qualify as a prior serious felony under section 667, subdivision (a)(1). (*People v. West* (1984) 154 Cal.App.3d 100, 110 [prior juvenile adjudications are not "'prior conviction[s]' within the meaning of . . . section 667, subdivision (a)"].)

(1975) 422 U.S. 806, 807; *People v. Johnson* (2012) 53 Cal.4th 519, 531 (*Johnson*).) "[T]he likelihood or actuality of a poor performance by a defendant acting in propria persona" does not "defeat the federal self-representation right." (*People v. Taylor* (2009) 47 Cal.4th 850, 866 (*Taylor*).)

States may, but need not, limit a defendant's right to self-representation and insist the defendant be represented by counsel at trial "on the ground that the defendant lacks the mental capacity to conduct his trial defense unless represented." (*Indiana v. Edwards* (2008) 554 U.S. 164, 174 (*Edwards*); *Johnson*, *supra*, 53 Cal.4th at p. 523.) In *Edwards*, *supra*, the United States Supreme Court concluded a so-called "gray-area defendant[]" may be competent to stand trial under *Dusky v. U.S.* (1960) 362 U.S. 402, but may be incompetent to conduct trial proceedings by himself due to "severe mental illness." (*Edwards*, *supra*, 554 U.S. at pp. 174, 178.)

In *Taylor*, *supra*, 47 Cal.4th at page 878, the California Supreme Court held *Edwards* "does not support a claim of federal constitutional error in a case like the present one, in which defendant's request to represent himself was granted." As the Supreme Court explained, "The court in *Edwards* did not hold . . . that due process mandates a higher standard of mental competence for self-representation than for trial with counsel. The *Edwards* court held only that states *may*, without running afoul of *Faretta*, impose a higher standard . . . ." (*Taylor*, *supra*, 47 Cal.4th at pp. 877-878; *Johnson*, *supra*, 53 Cal.4th at p. 527.)

In *Johnson*, *supra*, 53 Cal.4th at page 527, a case decided after Henley was sentenced, the California Supreme Court was "present[ed] with the reverse situation [of that in *Taylor*]: the trial court *denied* self-representation under *Edwards*." Therefore, the Court was tasked with "decid[ing] whether California courts may accept *Edwards's* invitation and deny self-representation to gray-area defendants." (*Ibid*.) The Supreme Court concluded "the standard that trial courts considering exercising their discretion to deny self-representation should apply is simply whether the defendant suffers from a severe mental illness to the point where he or she cannot carry out the basic tasks needed to present the defense without the help of counsel." (*Id*. at p. 530.)

12

The *Johnson* Court explained:  "Self-representation by defendants who wish it and validly waive counsel remains the norm and may not be denied lightly.  A court may not deny self-representation merely because it believes the matter could be tried more efficiently, or even more fairly, with attorneys on both sides.  Rather, it may deny self-representation only in those situations where *Edwards* permits it.  (*Johnson*, *supra*, 53 Cal.4th at p. 531.)  Moreover, "A trial court need not routinely inquire into the mental competence of a defendant seeking self-representation.  It needs to do so only if it is considering denying self-representation due to doubts about the defendant's mental competence."  (*Id*. at p. 530.)

The *Johnson* Court also reiterated its holding in *Taylor*, *supra*, 47 Cal.4th at page 878 that "*Edwards* 'does not support a claim of federal constitutional error in a case like the present one, in which defendant's request to represent himself was granted.' [Citation.]"  (*Johnson*, *supra*, 53 Cal.4th at p. 527.)

As set forth above, Henley contends the trial court violated his right to due process under the United States Constitution when it allowed him to represent himself during a portion of the court trial on the priors and at sentencing.[8]  We already have discussed the California Supreme Court case law holding there is no claim of federal constitutional error where a defendant is granted the right to represent himself.  (*Taylor*, *supra*, 47 Cal.4th at p. 878; *Johnson*, *supra*, 53 Cal.4th at p. 527.)  Henley cites no authority holding to the contrary.

Henley argues the trial court did not understand its discretion under *Edwards* to limit his right to self-representation and insist he be represented by counsel because he "lacks the mental capacity to conduct his trial defense unless represented."  (*Edwards*, *supra*, 554 U.S. at p. 174.)  The record does not support his argument.

---

[8] Henley is not claiming he was incompetent to stand trial.  Nor is he claiming his waiver of counsel was involuntary or unintelligent.  (See *Godinez v. Moran* (1993) 509 U.S. 389, 391 [competency standard for waiving right to counsel is not higher than competency standard for standing trial].)

13

As set forth above, the trial court repeatedly urged Henley to accept representation by counsel, informed Henley he was not qualified to represent himself, questioned Henley's understanding of the law and told Henley his legal arguments did not make sense. But there is nothing in the record indicating the court (Judge Veals) believed the deficiencies in Henley's performance were the result of "a severe mental illness." (*Edwards*, *supra*, 554 U.S. at p. 178; *Johnson*, *supra*, 53 Cal.4th at p. 530.)

Henley questions whether Judge Veals saw Dr. Rothberg's report in the court file. Dr. Rothberg's report, however, does not support Henley's claim the trial court erred in allowing him to represent himself. Dr. Rothberg's report does not demonstrate Henley was incompetent to conduct trial proceedings by himself due to severe mental illness. Although Dr. Rothberg noted Henley's "long history of psychiatric difficulties," he did not conclude Henley's poor reasoning and decision making were "colored by psychotic distortion." Dr. Rothberg found Henley competent to represent himself.

Moreover, the fact the trial court denied Henley's request to represent himself in January 2010, before the first trial in this matter, does not demonstrate that in July 2011 (one and one-half years later) Henley was incompetent to conduct trial proceedings by himself due to severe mental illness.

Henley has not demonstrated the trial court abused its discretion in allowing him to represent himself at a portion of the court trial on the priors and at sentencing. The record does not indicate Henley "suffers from a severe mental illness to the point where he . . . cannot carry out the basic tasks needed to present [a] defense without the help of counsel." (*Johnson*, *supra*, 53 Cal.4th at p. 530.)

**Findings on Prior Conviction Allegations**

Henley contends there is insufficient evidence supporting the true findings on the prior conviction allegations. He argues the admission of evidence the prosecution introduced to prove the allegations violates the Confrontation Clause because the evidence is testimonial.

To prove the prior conviction allegations, the prosecution introduced certified prison records regarding the 1986 and 1990 convictions (the section 969b packet),

14

certified Los Angeles County Superior Court and California Court of Appeal records regarding the 1977 juvenile adjudication, and a rap sheet. None of these records are testimonial.

In *Crawford v. Washington* (2004) 541 U.S. 36, 68, the United States Supreme Court held testimonial evidence is admissible only when the proponent establishes unavailability and a prior opportunity to cross-examine. In *People v. Taulton* (2005) 129 Cal.App.4th 1218, 1225, the Court of Appeal concluded a section 969b packet is not testimonial because the records "are not prepared for the purpose of providing evidence in criminal trials or for determining whether criminal charges should issue." The records "are prepared to document acts and events relating to convictions and imprisonments." (*Ibid.*) Similarly, in *People v. Morris* (2008) 166 Cal.App.4th 363, 370-371, the Court of Appeal explained rap sheets fall outside the scope of *Crawford* because their purpose "is to permit law enforcement to track necessary information regarding the arrest, conviction, and sentencing of individuals and to communicate that information to other law enforcement agencies," not to provide evidence in criminal trials. For the same reasons, the certified court records documenting Henley's conviction and sentence are nontestimonial.

On appeal, Henley does not challenge the evidence on any other basis. He does not dispute the evidence is sufficient to prove the prior conviction allegations to the extent it is nontestimonial and not in violation of the Confrontation Clause.

We note that, prior to the trial court making its true findings on the prior conviction allegations, Henley admitted the priors. Initially, he contested the priors because he believed he would have an opportunity to show the circumstances of the underlying convictions did not constitute robbery. When the trial court explained to him that the only purpose of the court trial was to determine whether he had three prior robbery convictions—and that he could not attack the convictions—Henley admitted the three prior robbery convictions documented in People's Exhibit Nos. 14-16 were indeed his.

Sufficient evidence supports the true findings on the prior conviction allegations.

15

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED.

                                                              CHANEY, J.

We concur:


MALLANO, P. J.


ROTHSCHILD, J.

16